UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

SURGERY CENTER OF VIERA, LLC,

   *Plaintiff*,

vs.

UNITEDHEALTHCARE, INC.,

   *Defendant*.

_____/

**COMPLAINT**

Plaintiff, Surgery Center of Viera, LLC ("SCV"), as authorized representative, assignee, and medical provider of patient / insured C.R., sues Defendant, UnitedHealthcare, Inc. ("UHC"), as follows:

**NATURE OF THE ACTION, PARTIES,
JURISDICTION, AND VENUE**

1.  This action arises, in part (Count I), under the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), for Defendant's administrative record production failures relating to the subject C.R.-related health insurance claim, implicating ERISA, 29 U.S.C. § 1024(b), 29 U.S.C. § 1132(c)(1), and 29 C.F.R. § 2575.502c-1 to be precise.[1] This action also arises, in part (Counts II-IV), under

---

[1] One of the many problems created by Defendant's refusal to timely produce the administrative record and / or other germane documents required by Florida Statute and / or insurance contract (discussed in greater detail below) is SCV's inability to confirm with certainty that the underpayment aspect of this dispute emanates solely from a pricing dispute. Federal authority makes clear that a "rate of payment" dispute is subject to Florida state law rather than ERISA federal law. Because Defendant's legally, statutorily, and perhaps contractually repugnant refusal to timely produce administrative / germane records has stymied SCV's ability to make precise heads-or-

Florida state law for Defendant's wrongful, unsubstantiated underpayment of monies owed to SCV for medical services SCV provided to the patient / insured, C.R., on January 9, 2018.[2]

2. At all material times, SCV was a medical provider and a Florida limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Viera, Florida, Brevard County. SCV is *sui juris* in all respects. SCV's members are as follows: (a) Dr. Ara Deukmedjian, domiciled in Brevard County, Florida, (b) Sun Deukmedjian, domiciled in Brevard County, Florida, and (c) Dr. Bharat Patel, domiciled in Brevard County, Florida. At all material times, SCV was the authorized representative of C.R. with an assignment of benefits as well, having provided subject medical services to C.R. for which a proper amount of compensation was / is due and owing.

3. At all material times, UHC was an insurance company incorporated in the State of Minnesota with its principal place of business / headquarters ("nerve center") in the State of Minnesota and engaged in the business of selling insurance, administering insurance, and / or deciding and paying insurance claims (*i.e.*, claim administrating).[3]

4. This Court possesses original jurisdiction pursuant to Title 29, United States Code, Section 1132(c)(1), and Title 28, United States Code, Section 1331 at least with respect

---

tails of the reasons for Defendant's claim underpayment (as was / is SCV's legal right), SCV reserves the right to amend this complaint to expound on Counts II-V relating to owed monies once Defendant is made to produce the germane documentation / information (often called an administrative record, in whole or in part) upon which the claim payment decision was based (Count I). Given the ongoing harm being created by Defendant's record production failures, legal action regrettably could not wait any longer.

[2] Because of the administrative record production failure (Count I) mentioned in footnote 1, *supra*, SCV is somewhat in the dark as to Counts II-V and, again, accordingly reserves the right to amend this complaint to expound on Counts II-V related allegations, if necessary.

[3] Upon information and belief and until (and if) learned otherwise, the Plan is / was fully insured (as opposed to self-funded), and SCV accordingly has not included the patient's / insured's employer and / or the Plan as co-defendants. In the event that discovery reveals the Plan to be self-funded, Plaintiff reserves the right to amend this Complaint to add the patient's / insured's employer and / or the Plan as necessary co-defendants.

to Count I. Pursuant to Title 28, United States Code, Section 1367, the Court has pendent jurisdiction over Counts II-V. Additionally, this Court has jurisdiction over the entire dispute pursuant to Title 28, United States Code, Section 1332, as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of interest, costs and attorney's fees.

5.  Venue is proper in the Middle District Court of Florida pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) a substantial part of the events or omissions giving rise to the subject action occurred in this jurisdiction, namely Defendant's underpayment of the subject insurance claim both at the initial claim and subsequent pre-suit appeal stages and refusal to supply germane documentation / information required by federal law (and also Florida Statute, for that matter, and also likely the subject withheld insuring agreement), and (b) the Orlando Division of this Court has personal jurisdiction (due to minimum contacts in this forum) over UHC.

6.  All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

## COMMON ALLEGATIONS

7.  At all material times, C.R. was covered by the Plan as evidenced by Defendant's partial payment of the subject claim. Upon information and belief, the Plan's Group number was / is 909155 and the Patient's I.D. number was / is 933474659. The assigned claim reference number was / is 7003922732 0033430789. A copy of the insurance policy cannot be attached because, again, Defendant has failed / refused to produce any documents to SCV, but SCV reserves the right to incorporate the insurance policy into this action either by

complaint amendment or party stipulation.[4]

8.     At all material times leading up to the subject medical services received from SCV, C.R. suffered from chronic debilitating neck pain and radiculopathy. C.R. tried alternative, conservative management treatments, which failed and surgical treatment was deemed medically necessary. So, on January 9, 2018, SCV operated on C.R. to remedy C.R.'s medical conditions.

9.     SCV's billed charges for the subject medical services rendered to C.R. totaled $418,133.00, and a claim package was submitted to UHC relating to same.

10.    At all material times, UHC was in agreement with Preferred Medical Claim Solutions ("PMCS") (as UHC's affiliate and / or subcontractor) to secure discounted rates from providers (like SCV), which were secured here in relation to SCV.[5]

11.    The PMCS allowed amount re-pricing contract (*see* Ex. A) was in full force and effect and was a legally valid and binding contract that established / developed (a) an allowed amount re-pricing rate of 80% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum, and (b) a 100% reimbursement rate for hard costs (*e.g.*, prosthetics / implants).

12.    By way of a document entitled "Provider Remittance Advice" (more commonly called an explanation of benefits, "EOB") dated April 5, 2018, on UHC letterhead, UHC underpaid the subject claim, tendering $44,814.06.

---

[4] The only document SCV happens to possess that somewhat speaks to benefits is the UHC "Summary of Benefits and Coverage," which is by no means the operative insurance policy but is attached hereto as **Exhibit A**.

[5] A Copy of the pertinent pages of the PMCS re-pricing contract that was procured on UHC's behalf (along with the PMCS "client" lists listing UHC) are attached hereto as **Exhibit B**.

13.     As for the purported bases for UHC's underpayment amount, the EOB nakedly sets forth the following in a section entitled "NOTES":

> OA 94 Other Adjustments – Processed in excess of charges.
> PI242 Payer Initiated Reductions – Services not provided by Network/Primary Care Providers.
> PI97 Payer Initiated Reductions – The benefit for this service is included in the payment allowance for another service/procedure that has already been adjudicated.
> IS Member: The provider of this service is out-of-network. If you're asked to pay any amount over your co-insurance, co-pay or deductible, call toll-free at 1-866-835-4022. Provider: This claim has been reimbursed using data isight, which utilizes cost data if available (facilities) or paid data (professionals). Please do not bill the patient above the amount of co-insurance, co-pay or deductibles applied to this service. If you have questions about the reimbursement amount visit data isight.com or call toll-free at 1-866-835-4022.
> MA15 Your claim has been separated to expedite handling. You will receive a separate notice for the other services reported.

14.     A separate EOB dated March 2, 2018, which advised Plaintiff as to a $0.00 payment being made, nakedly set forth the following information in a section entitled "NOTES":

> OA 94 Other Adjustments – Processed in excess of charges.
> PI97 Payer Initiated Reductions – The benefit for this service is included in the payment allowance for another service/procedure that has already been adjudicated.
> PR2 Patient Responsibility – Coinsurance amount.
> NI Payment for this service is denied. Benefits are only available when you receive services from a provider in your Plan's network.
> MA15 Your claim has been separated to expedite handling. You will receive a separate notice for the other services reported.

15.     On or about January 4, 2018 (prior to the subject surgery), UHC advised the patient / insured, C.R., that the subject medical services / surgery was deemed "medically necessary" and "would be covered at the network level because there was not a doctor, health care professional, or facility in C.R.'s area to provide the services."

5

16.     Again, this is not a coverage dispute (*i.e.*, "right of payment claim") because UHC properly conceded coverage *via* the $44,814.06 partial claim payment, did not list any medical judgment related basis for partial payment amongst the claim decision EOB codes, and advised the patient / insured that the procedure was medically necessary and would be considered in-network.  Therefore, this is a damages dispute (*i.e.*, "rate of payment claim") pertaining solely to the underpayment that was predicated on UHC's aberrant claim decision-making.

17.     On or about May 24, 2018, undersigned counsel sent correspondence to UHC advising UHC that he represented Plaintiff, SCV. The letter contained a request for the entire administrative record / claim file pursuant to the law (the United States Code and, to some extent, Florida Statute) and / or the withheld insurance policy (as most insurance policies provide for free copies of all materials bearing on claims and appeals decisions). The pertinent content of this letter sent was as follows:

> Regarding our assessment of the carrier's claim(s) denial, underpayment, or delayed non-decision, please promptly provide us with a copy of the entire administrative record.  The administrative record should consist, at minimum, of the following:  (1) Complete, certified copies of all plan documents (master policy, summary plan description, benefit booklet, certificate of coverage, or the like) in effect at the times of the subject medical services and / or at the times of any claims made relating to the subject medical services; (2) Copies of all correspondence and / or documents exchanged between the carrier and the insured (or any insured representatives) regarding the subject medical services and / or any claims made relating to the subject medical services; (3) Copies of all correspondence and / or documents exchanged between the carrier and SCV regarding the insured, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; (4) Copies of all correspondence and / or documents exchanged between the carrier and any other party (less attorney-client privileged data, of course) regarding the subject medical services and / or any claims made relating to the subject medical services; (5) Copies of all of the insured's SCV-related medical records in the carrier's possession; (6) Identification of all policy / plan language upon which

the claim(s) decision-making was based; (7) Contact information for any medical professionals enlisted by the carrier regarding the subject medical services and / or any claims made relating to the subject medical services; (8) Transcripts and audio recordings of any recorded statements or phone calls between the carrier and the insured (or any representatives of the insured) regarding the subject medical services and / or any claims made relating to the subject medical services; (9) Transcripts and audio recordings of any recorded statements or phone calls between the carrier and SCV regarding the subject medical services and / or any claims made relating to the subject medical services; (10) Transcripts and audio recordings of any recorded statements or phone calls between the carrier and any other party (less any attorney-client privileged data, of course) regarding the subject medical services and / or any claims made relating to the subject medical services; (11) All EOBs relating to any claims that were made relating to the subject medical services; (12) All SCV billing and / or claim(s) submission paperwork received by the carrier relating to the insured; (13) All evidence of any payment(s) made by the carrier relating to any claims that were made relating to the subject medical services; (14) All guidelines, manuals, written protocol, medical treatises, medical literature, and / or the like upon which the carrier partially or wholly based its claim(s) decisions; (15) All billing paperwork, rate schedules, data or formulas relating to "usual, customary, reasonable" (UCR) medical provider charges, and / or any other data upon which the carrier has based its decisions as to how much indemnity to afford on the subject claim(s); and (16) Copies of any other documents that the carrier partially or wholly relied on in deciding any claim(s) relating to the subject medical services.

18. On October 2, 2018, SCV, through counsel, submitted an appeal of the subject claim, due to deadlines but regrettably sans germane records from UHC that had been requested several months earlier.

19. On October 17, 2018, UHC responded requesting authorization from the patient / insured, C.R.

20. On January 3, 2019, SCV, through counsel, responded providing UHC with the requested authorization form.

21. On January 11, 2019, UHC responded advising SCV that "[w]e have completed our review and confirmed that the claim was processed correctly. As a result, we are unable to

issue any further payment." Additionally, UHC stated that its decision was made because somehow, in the carrier's view, "the time for appeal has passed."

22. On March 7, 2019, SCV, through counsel, submitted a second level appeal, which stated, among other things, that its first level appeal was timely and that UHC had frustrated the appeal process by failing to provide the administrative record and / or other germane documentation / information involved in the carrier's claim decision-making.

23. On March 8, 2019, UHC responded to the second level appeal by acknowledging receipt of the same, but failed to respond to the substance of the appeal, failed to tender further payment, and otherwise failed to reconsider any aspects of the adjustment. No further communications have been received to date from UHC relating to this claim.

24. SCV exhausted the pre-suit appeal process to the best of its ability, hindered by Defendant's wrongful refusal to provide required / requested administrative records (and / or like records available per contract or Florida Statute requiring explanation / substantiation to the recipient of an adverse benefits determination, here SCV), in an effort to accomplish Defendant's doing the right thing (*i.e.*, properly compensating SCV) sans litigation, to no avail. Hence, this lawsuit as SCV's regrettable last resort.

25. Under the PMCS re-pricing analysis, for example, UHC should have used an 80% rate to calculate the allowed amount equaling $351,230.20 (which such amount is 80% of all non-implant HCFA line-items and 100% of all implant HCFA line-items).[6] This is the amount that the assumed patient responsibilities (capped at an annual out-of-pocket maximum)

---

[6] Implants are hard costs and not subject to a re-pricing discount.

should have been deducted from. The $351,230.20 less UHC's prior payment (which such prior payment presumably already took patient responsibilities subject to the annual out-of-pocket maximum into consideration) leaves an outstanding balance of $306,416.14 due and owing to SCV. This amount is exclusive of attorneys' fees, costs, interest, and / or extra-contractual exposure.

26. SCV has suffered significant financial harm no matter how one slices this situation. The financial harm by way of owed health insurance benefits is in excess of $75,000.00, not including interest of attorneys' fees, costs, or interest, if, for examples, the negotiated 80% rate prescribed by UHC's third-party re-pricing vendors (*e.g.*, PMCS, ) is honored / enforced as it should be, or even if rates prescribed by publicly available databases assessing the charges of providers of like kind within like geographies, like Agency for Health Care Administration ("AHCA"),[7] were to utilized in the re-pricing assessment, or doubtless even if rates comporting with the withheld insurance policy were to be utilized in the re-pricing assessment.

27. SCV exhausted the pre-suit appeal process (again, as best it could amidst Defendant's record production failures keeping it in the blind) in an effort to accomplish Defendant's doing the right thing (*i.e.*, properly compensating SCV) sans litigation, to no avail. Hence, this lawsuit as SCV's last resort.

---

[7] *See, e.g.*, http://www.floridahealthfinder.gov/LandingPages/HospitalASC.aspx and http://www.floridahealthfinder.gov/CompareCare/SelectChoice.aspx.

**COUNT I – PETITION TO COMPEL PRODUCTION OF THE "ADMINISTRATIVE RECORD" AND FOR RECOVERY OF ADMINISTRATIVE RECORD PRODUCTION FAILURE PENALTY PURSUANT TO ERISA, 29 U.S.C. § 1024(B), 29 U.S.C. § 1132(c)(1) AND 29 C.F.R. § 2575.502c-1**

SCV re-alleges Paragraphs 1 through 27 as if fully set forth herein, and further alleges as follows.

28. This is a claim for production of the administrative record and for award of administrative record production failure penalty pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1.

29. By letter(s) (referenced in the above common allegations), SCV and / or its legal counsel asked UHC to provide the administrative record / germane documentation in relation to the C.R. claim, mainly (but not entirely) to learn Defendant's reasons for claim underpayment so that SCV could contest same in an educated fashion (pre-suit and, only if need be, in suit).

30. UHC shirked its legally (whether that be United States Code or Florida Statutes) and likely also contractually prescribed administrative / germane record production responsibilities.

31. Per the above-cited United States Code and Code of Federal Regulations, *see* ¶ 1, *supra*, the $110.00 / day administrative penalty started accruing June 24, 2018.[8] From June 24, 2018 through the date of this complaint (January 7, 2019), 562 days have passed without Defendant's satisfaction of the administrative record / germane record requests made

---

[8] This represents the date which falls 31 days after the May 24, 2018 request for the administrative / germane records.

in the aforementioned letter regarding the C.R. claim. So, as of the filing date of this complaint, the $110.00 / day administrative penalty totals $61,820.00. Of course, the $110.00 / day penalty will continue to accrue until such time that Defendant obliges the germane documentation / information requests (*e.g.,* a certified copy of the policy / plan document, payment rate schedules / formulas, *et cetera*, *see* ¶ 17, *supra*) set forth in the May 24, 2018 letter noted above.

32. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's wrongful withholding of the administrative record / germane documentation.

33. As a further result of Defendant's refusal to produce the administrative record / germane documentation, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Title 29, United States Code, Section 1132(g)(1) or Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, respectfully requests (a) Court order compelling Defendant, UnitedHealthcare, Inc., to produce the outstanding administrative record posthaste and allowing SCV thirty days following production of the administrative record to amend this complaint, (b) an award to SCV of the administrative record production failure penalty incurred by defendant pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1, (c) an award to SCV of attorneys' fees (pursuant to Title

29, United States Code, Section 1132(g)(1)) and costs incurred bringing this action, and (d) the Court's affording of any other relief the Court deems equitable, just, and / or proper.

## COUNT II – BREACH OF CONTRACT

SCV re-alleges Paragraphs 1 through 27 as if fully set forth herein, and further alleges as follows.

34. At all material times to this action and in exchange for a valuable premium, UHC (and perhaps the patient's employer, *see* footnote 3, *supra*) provided health insurance to C.R. under the withheld insurance policy, which is a binding and enforceable insurance contract under the laws of the State of Florida.

35. The subject medical services were covered under the withheld insurance policy, as evidenced by Defendant's partial payment of insurance benefits relating to same. The subject SCV bill should have been paid out pursuant to third-party re-pricing rates as established by PMCS at the very least (80% of all non-implant HCFA line-items and 100% of all implant HCFA line-items because implants are hard costs not subject to a re-pricing discount) and / or publicly available databases assessing the rates of similarly-situated medical providers in like Florida geographies (*e.g.*, AHCA's publicly available databases). Defendant's erred in deciding to not properly compensating SCV by only tendering a $44,814.06 underpayment in relation to $418,133.00 in billed charges.

36. By the the terms of the insurance policy (upon information and belief per UHC's withholding of same) and pursuant to Florida law regardless, UHC had a duty to, among other things, properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and properly compensate SCV in relation to same.

37. Defendant failed SCV in these regards (most notably with respect to their failure to properly compensate SCV for the valuable medical services rendered to the insured / patient), which doubtless breached the insurance policy and / or violated Florida law and certainly breached the PMCS contract.

38. As a direct, foreseeable, and proximate result of Defendant's breach of their doubtless obligations under the insurance policy, obligations under Florida law, and / or obligations under the PMCS contract, SCV has suffered and continues to suffer damages.

39. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's improper compensation to SCV related to the subject medical procedure.

40. As a further result of Defendant's refusal to properly compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, UnitedHealthcare, Inc., for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

**COUNT III – UNJUST ENRICHMENT**

SCV re-alleges Paragraphs 1 through 27 as if fully set forth herein, and further alleges as follows.

41. SCV conferred a direct benefit upon Defendant by providing UHC's insured / member (C.R.) with medical services to which the insured was entitled under the insurance policy as evidenced by Defendant's partial payment. Examples of "conferral of benefit" would include the following, for examples, which are posed as questions: (a) What about UHC receiving the benefit when its policyholder received care and treatment offering Defendant's insurance policy as their primary method of payment? (b) What about the good health of C.R. conferred on UHC? Was it not of benefit to UHC that SCV minimized (if not entirely eliminated) C.R.'s future medical expense (and insurance claims to UHC) relating to the subject conditions such as prolonged alternative treatments or a return for more (and perhaps more complex) surgery due to complications arising out of some other inferior treatment regimen?

42. Defendant voluntarily accepted and received the benefit conferred by SCV, with the knowledge (through course of past dealings with SCV or otherwise) that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, and reasonable charges as prescribed, for examples, by reasonable, negotiated re-pricing vendors (e.g., PMCS) or by Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography.

43. Defendant has not paid the value of the benefit conferred by SCV in that Defendant has significantly underpaid SCV's claim for the medical services provided to C.R.

44. Defendant's underpayment results in a windfall for UHC in that (a) Defendant collect premiums in return for agreeing to properly compensate providers, like SCV, who render covered medical services, and / or (b) Defendant enjoys an unearned profit in relation

to the insurance benefits themselves, in relation to interest that has accrued on the wrongly withheld benefits, in relation to investment returns enjoyed through the monies wrongly withheld from SCV, in relation to level-funded plan profits enjoyed through the wrongly withheld monies, and / or *et cetera*.

45. It is unjust under the circumstances for Defendant to underpay SCV's claim.

46. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject health insurance benefits.

47. As a further result of Defendant's refusal to properly compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, UnitedHealthcare, Inc, for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT IV – *QUANTUM MERUIT*

SCV re-alleges Paragraphs 1 through 27 as if fully set forth herein, and further alleges as follows.

48. SCV conferred a direct benefit upon Defendant by providing UHC's insured / member (C.R.) with medical services to which they were entitled under the insurance policy


as evidenced by Defendant's partial payment. Examples of "conferral of benefit" (in the form of questions) are discussed in Paragraph 41, *supra*, and incorporated into this count by reference.

49. SCV billed Defendant its usual, customary, and reasonable charges for the services as prescribed by, for examples, reasonable re-pricing vendors (*e.g.*, PMCS) or Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography. The billed charges represent the fair market value of the services rendered.

50. Defendant received the bill from SCV but underpaid SCV for the services.

51. A contract implied-in-fact was doubtless established through UHC's knowledge that services were being rendered and both sides intended for compensation to be paid, with the parties possessing the compensation intention through the course of their past dealings or otherwise.

52. In order for the implied-in-fact contract to have been formed, UHC did not have to be the recipient of the services or request the services.

53. SCV is entitled to reasonable compensation for the services (*i.e.*, *quantum meruit*), which is by no means accomplished by the unsubstantiated claim payment but is reflected in reasonable sources such as third-party re-pricing vendors' (*e.g.*, PMCS) or Florida's publicly available AHCA databases of assessments of SCV's rates. And determination of the proper amount of compensation is a question of fact reserved for a jury.

54. The circumstances are such that it would be inequitable for Defendant to retain the benefit of the subject medical services without paying SCV the proper value for same.

55. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject health insurance benefits.

56. As a further result of Defendant's refusal to properly compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, UnitedHealthcare, Inc., for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

**COUNT V – VIOLATION OF SECTION 627.64194 OF THE FLORIDA STATUTES**

SCV re-alleges Paragraphs 1 through 27 as if fully set forth herein, and further alleges as follows:

57. UHC is an insurer governed by Chapter 627 of the Florida Statutes.

58. SCV provided nonemergency services to C.R. The services are covered services pursuant to Section 627.64194 of the Florida Statutes.

59. SCV billed UHC, specifying the nature of the services in its claim submission package and usual, customary, and reasonable charges for such services. The billed charges represent the fair market value of the services rendered.

60. UHC rendered a claim decision that grossly underpaid SCV for the services

rendered to C.R.

61. UHC is required, pursuant to Sections 626.64194(4) and 626.64194(5) of the Florida Statutes (both of which *via* Section 626.64194(4) refer to Section 641.513(5) in the following regard), to properly compensate SCV for the subject medical services in an amount equal to the lesser of: (a) SCV's charges, (b) the usual and customary provider charges for similar services in the community where SCV provides services, or (c) the charge mutually agreed to by SCV and UHC within sixty days of SCV's claim submission.

62. UHC's claim underpayment decision fails to satisfy Sections 626.64194(4) and 626.64194(5).

63. Defendant, UHC, has failed to comply with Section 627.64194 of the Florida Statutes by underpaying SCV for the subject medical services.

64. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendant's underpayment of the subject health insurance benefits.

65. As a further result of defendant's refusal to properly compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, UnitedHealthcare, Inc., for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## JURY DEMAND

66. Plaintiff, Surgery Center of Viera, LLC, demands a trial by jury on all issues so triable as a matter of right.

Dated: January 7, 2020

Respectfully Submitted,

**CALLAGY LAW, P.C.**
1900 N.W. Corporate Blvd., Ste 310W
Boca Raton, Florida  33431
(561) 405-7966 (o); (201) 549-8753 (f)

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Fla. Bar No. 41103
jgreyber@callagylaw.com
hcasebolt@callagylaw.com
*Attorneys for Plaintiff*